UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY BETH OLIVER,

    Plaintiff,                           CIVIL ACTION NO. 14-13318

  v.

                                   DISTRICT JUDGE DAVID M. LAWSON
                                   MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as there is substantial evidence on the record that claimant retained the residual functional capacity for a limited range of sedentary work.

**II.    REPORT**

**A. Introduction and Procedural History**

Plaintiff filed an application for Social Security disability income benefits on December 1, 2011, alleging that she had been disabled and unable to work since December 20, 2010, at age 40, due to coronary heart disease, vestibulopathy, depression and generalized

anxiety. Benefits were initially denied by the Social Security Administration. A requested <u>de novo</u> hearing was held on March 14, 2013, before Administrative Law Judge (ALJ) Oksana Xenos. The ALJ subsequently found that the claimant was not entitled to disability benefits because she retained the ability to perform a limited range of sedentary work. The Law Judge restricted claimant from jobs that exposed her to unprotected heights and moving machinery. She could only have occasional contact with the general public, and was unable to climb ladders, ropes or scaffolds. She was also prohibited from driving commercial vehicles. The Appeals Council declined to review that decision[1] and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Claimant was 43 years old at the time of the administrative hearing (TR 31). She had a limited ninth grade education, and had worked as a hairdresser until December 2010, when she began experiencing severe chest pain (TR 32). Plaintiff underwent a heart catheterization with stent replacement (TR 17). Following the procedures, claimant testified that she remained disabled and unable to work due to "vesibular nerve damage", that caused vertigo

---

[1] Where, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner. 20 C.F.R. § 404.981. Judicial review is limited to determining whether substantial evidence supports the ALJ's findings and whether the ALJ applied the correct legal standard in reaching his decision. <u>Warner v. Commissioner</u>., 375 F.3d 387, 390 (6th Cir. 2004); <u>Key v. Callahan</u>, 109 F.3d 270, 273 (6th Cir. 1997). Therefore, the medical evidence attached to Plaintiff's Brief in Support of Summary Judgment was not considered by the undersigned. The evidence presented to this Court does not warrant a remand for further administrative consideration because Plaintiff has failed to show that good cause existed for failing to incorporate such evidence into the record in a prior proceeding.

and eyesight problems (TR 33-34). As a result of the condition, Plaintiff indicated that she could not use a computer due to poor hand-eye coordination (TR 33). Claimant explained that she was able to perform some household chores, such as dusting, mopping and sweeping, but she quickly experienced general weakness, chest pain and shortness of breath upon exertion (TR 34-35, 38-39). Plaintiff estimated that she could sit or stand for five minutes, lift about five pounds and walk approximately a half block before becoming fatigued (TR 36-37).

A Vocational Expert (VE), Lawrence Zatkin, testified that if claimant were capable of sedentary work, there were numerous unskilled sorting, packaging, inspection and small assembly jobs that she could still perform with minimal vocational adjustment (TR 41-42). These jobs did not expose her to unprotected heights, uneven terrain or moving machinery. She would only have to occasionally interact with the general public, never climb ladders, and not perform any commercial driving (TR 41).

### B. ALJ Findings

The Administrative Law Judge found that Plaintiff was impaired as a result of coronary artery disease, vestibulopathy, depression and anxiety. Claimant did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. Nevertheless, the ALJ determined that Plaintiff remained capable of performing a range of sedentary work that would not expose her to unprotected heights, moving machinery, uneven terrain, climbing ladders or frequent contact with the general public. She was further limited

to jobs that did not require any driving of commercial vehicles. The ALJ found that Plaintiff retained the residual functional capacity to perform a significant number of sedentary jobs, within those limitations, as identified by the Vocational Expert (TR 14-22).

### C. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if even substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court

would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff maintains that substantial evidence does not exist on the record supporting the Commissioner's determination that her cardiac condition was not severe enough to meet or equal section 4.04C of the Listing of Impairments. Furthermore, claimant contends that the ALJ improperly discounted her allegations of disabling functional limitations, given the medical evidence of record. Defendant counters that the claimant retains the residual functional capacity for a reduced range of sedentary work because the objective clinical evidence of record did not confirm the disabling nature of her heart impairment, coordination problems or mental difficulties.

**D.  Discussion and Analysis**

After review of the record, I suggest that there is substantial evidence on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a restricted range of sedentary work. The medical evidence, as a whole, fails to provide objective support for claimant's allegations of severe and totally disabling functional limitations stemming from her cardiac impairments, poor hand-eye coordination, depression or anxiety.

Plaintiff initially asserts that she should have been found disabled since her cardiovascular impairment was severe enough to meet the criteria of section 4.04C of the Listing of Impairments. (See Plaintiff's Brief in Support of Summary Judgment at pp.11-13).

Listed Impairment 404 deals with ischemic heart disease. To meet the requirements of Listing 4.04C, the claimant must establish that she has:

> C.   Coronary artery disease demonstrated by angiography (obtained independent of Agency disability evaluation) or other appropriate medically acceptable imaging. In the absence of a timely exercise tolerance test or a timely normal drug induced stress test, a medical consultant (preferable one experienced in the care of patients with cardiovascular disease) has concluded that the performance of exercise tolerance test would present a significant risk to an individual with 1 and 2:
> 1. angiographic evidence showing
>    a. 50% or more narrowing of a non-bypassed left main coronary artery;
>    b. 70% or more narrowing of another non-bypassed coronary artery;
>    c. 50% or more narrowing involving a long segment of a non-bypassed coronary artery;
>    d. 50% or more narrowing of at least two non-bypassed coronary arteries;
>    e. 70% or more narrowing of a bypass graft vessel; and
>
> 2. resulting in very serious limitations in the individual's ability to independently initiate, sustain, or complete activities of daily living. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.04C.

The ALJ evaluated Plaintiff's impairment under the requirements for Listing 4.04C, and determined that there was neither angiographic evidence to show that she had the required narrowing of non-bypassed arteries or graft vessels, nor the required serious limitations in performing daily activities (TR 15). Moreover, the state agency physician who considered Plaintiff's heart impairment pursuant to Listing 4.04 (Tr. 51), determined that she had the residual functional capacity to perform light work activity (TR 53).

I suggest that a review of the medical evidence of record supports these findings and reveals that the claimant's heart condition fails to satisfy the introductory section of the above listing, which states that she must present evidence that a medical professional has determined that performance of an exercise tolerance test would present a significant risk. A review of the medical evidence fails to find any indication that Plaintiff would be at significant risk if she engaged in exercise tolerance testing. In fact, claimant underwent two exercise tests in 2011 and 2012, where she demonstrated that she had good exercise tolerance (TR 239, 254, 386).

Plaintiff also alleges that the ALJ failed to evaluate whether her impairments were equivalent to the severity requirements of Listing 4.04C (Plaintiff's Brief in Support of Summary Judgment at pp. 13-14). While the Law Judge did not specifically state that claimant's impairments did not medically equal Listing 4.04C, the ALJ did find that Plaintiff's impairments, and combination of impairments, did not meet or medically equal a listed impairment (TR 15). Claimant failed to point to any evidence demonstrating that her impairments equaled the severity of the listing. Given that the burden rests on Plaintiff at step three, she failed to meet her burden of proving that she should have automatically qualified for disability benefits as a result of meeting or equaling a listed impairment.

I further suggest that substantial evidence supports the finding that the claimant did not suffer from disabling depression or anxiety. Contrary to Plaintiff's assertion that she had serious limitations in her ability to perform daily activities, she previously acknowledged in

a Function Report that she could feed her pets, prepare meals on a daily basis, shop for groceries twice a month, pay bills, handle a savings account, use a checkbook, and visit with her mother several times a week (TR 141-144). Despite experiencing mild difficulties with concentration, persistence and pace[2], claimant was able pay her bills, count change, handle a savings account, drive, watch television and read books, newspapers and magazines (TR 16, 143, 146, 347, 350). The ALJ also noted that a field office representative, who interviewed Plaintiff face-to-face, noted no difficulties in claimant's ability to understand, concentrate, talk, or answer questions (TR 16, 129-130).

Nor is there objective medical evidence suggesting that she suffered severe side effects from pain medications, or that she needed to rest frequently throughout the day. The ALJ also took into consideration claimant's objectively proven functional limitations by restricting her to simple, routine jobs that did not require frequent climbing, exposure to unprotected heights, or having much interaction with the general public.

It is the rare case, indeed the exception, in which every piece of evidence points incontrovertibly toward a decision to deny benefits. There was evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that her testimony was fully credible. However, special deference is owed to the credibility findings of the ALJ,

---

[2]Contrary to claimant's assertion, her GAF score of 55 is not indicative of severe restrictions in concentration, persistence and pace. (See Plaintiff's Brief in Support of Summary Judgment at p. 16), A GAF score of 55 denotes that claimant had moderate mental health symptoms, which were accounted for in the ALJ's step two determination that her depression and anxiety were severe impairments (TR 14). The ALJ took into consideration Plaintiff's difficulties in this area by restricting her contact with the general public.(TR 16).

who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fit in with the rest of the medical evidence. Such observation is invaluable and should not be discarded lightly. Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978). See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

By establishing that she could not return to her past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that she had the vocational qualifications to perform alternative jobs in the economy, notwithstanding her various impairments. The Commissioner, however, met her burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to a hypothetical question that took into consideration claimant's educational and vocational background, along with her significant impairments[3], the Vocational Expert testified that there were numerous unskilled sorting, packaging, inspection and small assembly jobs that she could still perform with minimal vocational adjustment (TR 41-42). These jobs did not expose her to unprotected heights, uneven terrain or moving machinery. She would only have to occasionally interact with the general public, never climb ladders and not perform any

---

[3]The Administrative Law Judge's hypothetical questions to the Vocational Expert (VE) accurately described Plaintiff's moderate limitations caused by her periodic angina, poor hand-eye coordination and emotional difficulties. The ALJ reasonably determined that claimant's on-going chest pain limited her to jobs that did not involve frequent climbing, or exposed her to such hazards as moving machinery, unprotected heights or uneven terrain  (TR 16-17). She was also limited to fairly simple tasks that did not require much contact with the general public (TR 16). The Sixth Circuit has held that hypothetical questions to experts are not required to included lists of claimant's medical conditions. Webb v. Commissioner, 368 F.3d 629, 633 (6th Cir. 2004). Under these circumstances, I suggest that the ALJ's hypothetical question accurately portrayed Plaintiff's impairments.

commercial driving (TR 41). Given the objective clinical findings of the examining physicians of record during the relevant period, substantial evidence existed on the record that Plaintiff retained the residual functional capacity for a restricted range of sedentary work activity.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                                      s/ Charles E Binder
Dated: April 15, 2015                            CHARLES E. BINDER
                                              United States Magistrate Judge